UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MEDLINE INDUSTRIES, INC., | ) |
| Plaintiff, | ) |
| vs. | ) No. 04 C 6013 |
| | ) Judge Joan H. Lefkow |
| DAYBREAK PARTNERS, L.L.C., DAYBREAK VENTURE, L.L.C., DAYBREAK HEALTHCARE, INC., and PETER C. KERN, | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Medline Industries, Inc. ("Medline"), has filed a two-count Second Amended Complaint ("Complaint") alleging state law breach of contract claims against defendants. Defendant Peter C. Kern ("Kern") has moved under Rule 12(b)(2), Fed. R. Civ. P., to dismiss the Complaint for lack of personal jurisdiction. For the reasons stated below, the motion is denied.

## MOTION TO DISMISS STANDARDS

In deciding a motion to dismiss for lack of personal jurisdiction, the court must take as true any jurisdictional allegations asserted by the plaintiff in the Complaint. *Turnock v. Cope*, 816 F.2d 332, 333 (7th Cir. 1987). The court may also consider affidavits submitted in connection with the motion, *Curry v. Vencor Hosp.*, No. 01 C 4256, 2002 WL 398602, at *1 (N.D. Ill. March 14, 2002); *R.R. Donnelly & Sons Co. v. Intera Info. Technologies Corp.*, No. 91 C 2511, 1991 WL 191588 (N.D. Ill. Sept. 18, 1991), but will resolve conflicts of fact in favor of the plaintiff. *John Walker & Sons, Ltd. v. DeMert & Doughtery, Inc. et al.*, 821 F.2d 399, 402

(7th Cir. 1987), citing *Deluxe Ice Cream Co. v. R.C.H. Tool Corp.*, 726 F.2d 1209, 1215 (7th Cir. 1984). Ultimately, it is the plaintiff's burden to establish personal jurisdiction. *Central States, Southeast and Southwest Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 939 (7th Cir. 2000).

## BACKGROUND

As of March 24, 1999, Texas Health Enterprises, Inc. ("Texas Health"), Daybreak's[1] predecessor in interest, owed Medline $1,402,313.89 as payment for goods received by Texas Health from Medline. To address this debt, Medline, Texas Health, and Kern, the sole shareholder and owner of Texas Health, executed a Promissory Note (the "Note"). The Note contains the following terms, among others:

> **THIS NOTE SHALL BE DEEMED TO HAVE BEEN EXECUTED, DELIVERED, ACCEPTED, MADE AND PERFORMED AT MUNDELEIN, ILLINOIS, U.S.A. AND DEBTOR HEREBY CONSENTS AND AGREES TO THE JURISDICTION OF ANY LOCAL, STATE, OR FEDERAL COURT WITHIN COOK OR LAKE COUNTY, ILLINOIS, U.S.A.**

(Sec. Am. Compl., Ex. A.)

After Texas Health and Kern failed to pay in full the obligations of the Note, Medline, Texas Health, and Kern executed an "Amendment to Installment Note." The Amended Note delayed payment of the amounts owed under the Note for a period of time to allow Texas Health to complete a reorganization in 2000. The Amended Note specifically provided, "All other terms of the First Note not explicitly amended above remain valid and effective." (*Id.*, Ex. B.) The Amended Note did not explicitly amend the jurisdictional consent provision quoted above.

---

[1] Daybreak Partners, L.L.C., Daybreak Venture, L.L.C., and Daybreak Healthcare, Inc. are referred to herein collectively as "Daybreak."

At the time it executed the Amended Note, Texas Health also agreed to the terms of a Supply Agreement dated February 1, 2000 (the "2000 Supply Agreement"). The 2000 Supply Agreement required that Texas Health purchase at least 90 % of its requirements for certain healthcare products from Medline from February 1, 2000 through December 31, 2002. The 2000 Supply Agreement provided, "Any litigation arising out of this Agreement or the subject matter of this Agreement will be filed in an Illinois court. Both parties consent to personal jurisdiction in Illinois." (*Id.*, Ex. C.)

Texas Health and Kern allegedly failed to make any payments under the Amended Note. Texas Health also allegedly began purchasing greater than 10 % of its requirements for healthcare products from a competitor of Medline, Gulf South Medical Supply Company, in violation of the 2000 Supply Agreement.

On April 30, 2001, Medline filed suit in the Circuit Court of Cook County, Illinois, against Texas Health and Kern for breach of the Amended Note, against Texas Health for breach of the 2000 Supply Agreement, and against Daybreak, which had negotiated purchase agreements with Gulf South Medical Supply Company on behalf of Texas Health, for tortious interference with the 2000 Supply Agreement. In settlement of the suit, Texas Health and Kern agreed to the terms of a second Supply Agreement dated June 1, 2001 (the "2001 Supply Agreement"). The 2001 Supply Agreement required that Texas Health purchase from Medline all of its requirements for medical surgical products, textiles, and DME products and 90 % of their other requirements. In turn, Medline agreed to reduce the debt and guaranty of Kern under the Note and Amended Note by 20 % of the outstanding obligation and to forbear from enforcing its rights against Kern under the Note and Amended Note, so long as there were no uncured material

breaches of the 2001 Supply Agreement by Texas Health. The 2001 Supply Agreement provided that it "supercedes and replaces any prior oral or written supply agreement between the parties." It also provided that "Illinois law governs this Agreement, regardless of States' choice or conflict of law rules." (*Id.*, Ex. E.)

The Complaint alleges that Daybreak, successor in interest to Texas Health, breached the 2001 Supply Agreement (Count I) and that Kern breached the terms of the Note and Amended Note (Count II).

## DISCUSSION

A federal district court sitting in diversity has personal jurisdiction over a defendant when a court of the state in which it sits would have such jurisdiction. *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1275 (7th Cir. 1997); *Klump v. Duffus*, 71 F.3d 1368, 1371 (7th Cir. 1995), *cert. denied*, 518 U.S. 1004 (1996). An Illinois state court has personal jurisdiction over a nonresident defendant if such jurisdiction is permitted by Illinois statutory law, the Illinois Constitution, and the United States Constitution. *RAR, Inc.*, 71 F.3d at 1276. The Illinois long-arm statute extends jurisdiction over nonresident defendants who transact business in Illinois, and those who participate in "[t]he making or performance of any contract or promise substantially connected with this State." 735 ILCS 5/2-209(a)(1), (a)(7). The Illinois long-arm statute also contains a catch-all provision that permits a court to exercise jurisdiction over a non-resident defendant to the limit allowed under the Illinois Constitution and the United States Constitution. 735 ILCS 5/2-209(c).

The Illinois Constitution allows for personal jurisdiction "when it is fair, just, and reasonable to require a nonresident defendant to defend an action in Illinois, considering the

quality and nature of the defendant's acts which occur in Illinois or which affect interests located in Illinois." *Rollins v. Ellwood*, 141 Ill. 2d 244, 275, 565 N.E. 2d 1302, 1316 (1990). The Seventh Circuit has noted that since *Rollins*, no Illinois court has ever found federal due process to allow personal jurisdiction while Illinois due process prohibited it." *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 725 (7th Cir. 2002). The *Hyatt* court stated that "there is no operative difference between the limits imposed by the Illinois Constitution and the federal limitations." *Id.* Consequently, where, as here, the defendant makes no argument that personal jurisdiction would not be "fair, just, and reasonable" under the Illinois Constitution, the court may bypass the Illinois due process analysis and conduct only a federal personal jurisdiction analysis. *Interlease Aviation Investors II L.L.C. v. Vanguard Airlines, Inc.*, 262 F.Supp.2d 898, 906 (N.D.Ill. 2003).

Under the federal law of personal jurisdiction, a party may waive objections to a court's personal jurisdiction by expressly or impliedly consenting to that court's jurisdiction. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n. 14 (citing *Ins. Co. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703 (1982)). "[P]articularly in the commercial context, parties frequently stipulate in advance to submit their controversies for resolution within a particular jurisdiction." *Id.* Such a forum-selection clause should be given binding effect unless there is a "strong showing that it should be set aside." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 8-18 (1972).

Kern explicitly consented to this court's jurisdiction in the Note. The Amended Note did not amend the jurisdictional consent provision. The Amended Note states that all terms of the original Note not explicitly amended by the Amended Note "remain valid and effective." Thus, the jurisdictional consent remained "valid and effective."

5

Kern argues, however, that the 2001 Supply Agreement rescinded Kern's consent to jurisdiction in this court. This argument is without merit. The 2001 Supply Agreement, which does not contain a jurisdictional consent provision, provided that the Agreement "supercedes and replaces any prior oral or written *supply* agreement between the parties." (Am. Compl., Ex. E.) (Empnasis added). The only prior *supply* agreement was the 2000 Supply Agreement. The Note and Amended Note contain no "supply" obligations of any kind. They are promissory contracts that merely set forth payment terms for a debt owed by Kern to Medline. The 2001 Supply Agreement "amends" the payment terms of the Note and Amended Note but contains no language suggesting that it alters the jurisdictional consent provisions of the Note. Thus, Kern's consent to the jurisdiction of this court in the Note is valid, and his motion to dismiss for lack of personal jurisdiction is denied.

## CONCLUSION

For the reasons stated above, the court denies Kern's motion to dismiss for lack of personal jurisdiction [#3].

ENTER: _____
JOAN HUMPHREY LEFKOW
United States District Judge

Dated: February 10, 2005